NEWARK AND BLOOMFIELD RAILROAD COMPANY ET AL.
v. THE TOWN OF MONTCLAIR.

Submitted December 6, 1912—Decided February 24, 1913.

1. Under section 61 of the Town act of 1895, damages cannot be assessed for the vacation of a portion of a street in favor of owners of land not abutting on the vacated portion.
2. The interest of owners of land abutting on a public street in the public easement in the street is not the private interest of part owners but an interest shared with the whole public who have occasion to use the street; and the abandonment by the public authorities of the public easement in a portion of the street on which they do not abut is not a taking of property of the abutting owners.

On *certiorari.*

Before Justices SWAYZE, VOORHEES and KALISCH.

For the prosecutor, *Maximilian M. Stallman.*

For the town of Montclair, *Robert M. Boyd, Jr.*

The opinion of the court was delivered by

SWAYZE, J. The town of Montclair, upon the petition of the railroad company, vacated that portion of Pine street where it crossed land of the railroad, in pursuance of a contract to abolish a grade crossing, and to substitute for that portion of the street a foot-bridge above grade. The railroad

company agreed to pay all damages that might be lawfully awarded for the vacation. Under section 61 of the Town act of 1895 (Comp. Stat., p. 5539) an assessment of damages has been made in favor of owners of land along Pine street not abutting on the vacated portion, and of land on Cherry street, which crosses Pine street at a right angle and runs nearly parallel with the line of the railroad.

The right of landowners to compensation for damages caused by the vacation of a public street is wholly statutory. Newark v. Hatt, 50 Vroom 548, 550. The right in this case rests upon section 61 of the Town act of 1895, as amended in 1910. Comp. Stat., p. 5539. Prior to the amendment the power given did not extend to the vacation of streets. The insertion of that power seems to have been the sole object of the amendment. The town had, however, had the power so far as necessary for the abolition of grade crossings since 1901, at latest. Comp. Stat., p. 4266, pl 114. It may therefore well be doubted whether the mere vacation of a portion of a street occupied by a railroad for the purpose of getting rid of a grade crossing is to be regulated by section 61 of the Town act. That section gives a veto power upon the proposed improvement to the owners of property subject to more than two-thirds of the assessment, and it would be most extraordinary if the absolute right to contract for the abolition of grade crossings given in 1901 could be qualified by a subsequent amendment of an act passed six years before. Although the amending act of 1910 does not indicate any intent to provide generally for the assessment of damages caused by vacation of a street except in cases where the course pointed out by the act is followed, we assume in favor of the contention of the town that damages may be assessed where the act is not followed. The question then is, do the clauses relating to damages reach the case of a vacation. An examination of section 61 makes it clear that it does not provide for damages to owners whose land is not taken. The commissioners are required to make a map showing all the lands, real estate and improvements to be taken, to ascertain the names of the owners of said real estate to be taken; to ascertain the value

of the interest of each known owner of real estate to be taken
and the damage done to such owner by taking the same; and
upon the passage of a resolution directing the awards to be
paid the fee-simple of the real estate taken is declared to be
vested in the town. This language is appropriate only to
cases where land is actually taken. It is quite inappropriate
to the case of damage done to other landowners whose land
is not taken and whose only injury is that which follows from
the discontinuance of a public easement by action of the public
authorities. The history of the legislation shows why the
language is inappropriate to the case of mere vacations. As
originally enacted (*Pamph. L.* 1895, *p.* 243) it applied only
to the laying out, opening, straightening, extending, widening
or otherwise changing as to their boundaries of streets or sec-
tions of streets. These acts all might require the actual tak-
ing of land. When, in 1910, the word "vacated" was in-
serted, no change was made in the language as to assessment
of damages. Vacation of a street is the very antithesis of
laying out and of the other similar acts authorized by the
original enactment; vacating a street instead of requiring
land to be taken is necessarily the giving up of the public
easement and freeing the land from a burden. Language
that was applicable to the acts authorized in 1895 is not ap-
plicable to the additional act authorized in 1910. Counsel
for the town contends with great ingenuity that the real estate
of the owners to whom these awards were made is in fact
taken, since they have an interest in·the public easement.
They have, but it is not the private interest of part owners
but the interest they share with the whole of the public who
may have occasion to use the street; and this public interest
is so entirely in the control of the public authorities that they
may abandon it when authorized by the legislature so to do,
without making compensation to property owners whose lands
may be thereby diminished in value. If the rights of the
landowners were property rights the legislature would, under
our constitutional limitations, be powerless to take them with-
out compensation. In Newark *v.* Hatt the Court of Errors
and Appeals, although it evinced anxiety to protect the land-

owners, expressly recognized the right of the legislature to authorize the vacation of streets without compensation. They said: "The right of the state to destroy public improvements of this class without compensation is not limited by the constitution, and except for the statute, as expressed in the charter of the city, this street could have been vacated without the slightest consideration of its effect upon any land lying along it, or the payment by the city of compensation to any landowners for damages."

The language of the Town act is very different from that used in the Newark charter, and that involved in the English cases cited by counsel. For instance, under the English statute all who were "injuriously affected" were entitled to compensation. *Metropolitan Board of Works* v. *McCarthy, L. R., 7 H. L.* 243. So also in the Scotch appeal. *Caledonian Railway Co.* v. *Walker, 7 App. Cas.* 259. Cases from states which take a different view of the effect of the constitutional limitation from that taken by our courts are, of course, not in point.

The awards of damages and the resolution, so far as it confirms the amounts, must be set aside, with costs.