FREDERICK M. HUBBELL et al., Appellees, v. CITY OF DES
MOINES, Appellant.

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Plenary Power
1 **to Vacate.** The legislative department of the state has plenary
power to vacate streets and alleys and may delegate such power
to municipalities. (Sec. 751, Code, 1897.)

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Vacation—
2 **Non-Destruction of Ingress or Egress—Damnum Absque Injuria.**
The vacation of a public street or alley by a city, without sub-
stantial inconvenience resulting to abutting landowners in pass-
ing to and from their property, deprives such owners of any
standing in court to question the legality of such vacation. Suf-
fering no substantial inconvenience in ingress and egress, such
owners suffer exactly as the public in general suffers, and such
damage is *damnum absque injuria.*

PRINCIPLE APPLIED: Action to nullify the vacation of an
alley. A substantial and permanent Coliseum, or convention hall,
was built the full length of a block between two main east and
west paved streets. Adequate and exclusive entrances were pro-
vided at each end of the building, opening upon the sidewalks
of the respective streets. Numerous windows were placed in the
east wall, but no entrance or exit ways. Abutting the east wall
for its entire length was a sixteen-foot alley, uneven and but
little used. Abutting the alley on the east thereof was a city
park. The city vacated the alley and merged it into the park
and built, at substantial cost, a pergola upon the vacated alley
and otherwise improved the park. *Held,* self-evidently, the abut-
ting owners suffered no damage other than that suffered by the
public generally, and could not complain.

**MUNICIPAL CORPORATIONS:** Streets and Alleys—Vacation—
3 **Power Not Conditioned on Prior Payment of Damages—Constitu-
tional Law.** A public street or alley may be legally vacated with-
out first having the damages, if any, to abutting property as-
sessed and paid or secured. (Const., Art. 1, Sec. 18.) Such vaca-
tion is not a "taking" of private property for public use. This
constitutional provision does not apply to every proceeding by
which private property may be affected for a public purpose.
The citizen is fully protected by his right to resort to the courts
to recover his *consequential* damages, if any.

PRINCIPLE APPLIED:    (See No. 2)  *Held,* ascertainment

and payment of present or prospective damages, *if any*, prior to vacation, were not necessary.

SALINGER, J., dissents.

*Appeal from Polk District Court.*—W. H. McHENRY, Judge.

SATURDAY, OCTOBER 2, 1915.

REHEARING DENIED THURSDAY, DECEMBER 16, 1915.

ACTION brought to declare void an ordinance vacating a certain alley. The plaintiffs ask an injunction against the obstruction of the alley also, on the ground that the damage to plaintiffs' property abutting thereon was not first ascertained and paid, as required by Art. 1, Sec. 18, of the Constitution, it being claimed by the plaintiffs that the vacation of the alley was a taking of private property for public use, in violation of the terms of the Constitution.—*Reversed.*

*R. O. Brennan, H. W. Byers* and *Eskil C. Carlson,* for appellant.

*Parker, Parrish & Miller,* for appellees.

GAYNOR, J.—On the 20th day of May, 1912, the defendant city passed the following ordinance:

"Be It Ordained by the City Council of the City of Des Moines:

"Sec. 1. That the north and south alley between West Second Street and the Des Moines River and bounded on the north by Grand Avenue and on the south by Locust Street, said alley lying immediately east of the Coliseum, be and the same is hereby vacated.

"Sec. 2. That said alley so vacated and described in Sec. 1 of this ordinance be and the same is hereby placed under the supervision of the superintendent of parks and public property, the same to be utilized for park purposes.

"Sec. 3. All ordinances or parts of ordinances in conflict herewith are hereby repealed.

"Sec. 4. This ordinance shall be in full force and effect from and after its passage and publication as provided by law."

It appears that the plaintiffs are the owners of certain lots, occupied by the Coliseum referred to in said ordinance. This Coliseum building extends from Locust Street to Grand Avenue, immediately west and abutting upon the alley referred to. It is built of brick, has windows on the east side, facing the alley, but has no means of exit or entrance to or from the alley. The entrance is from Locust Street on the south, and from Grand Avenue on the north. On the north end of the Coliseum building, facing on Grand Avenue, there are two doors, or openings, one large enough to admit a large wagon or anything of that kind, and the other for the admission of people. On the south end of this building, fronting on Locust Street, there are three or four doors. All the exits and entrances are on the north and south sides of the building, facing on Locust Street and Grand Avenue. Grand Avenue is sixty-six feet wide between lot lines, and the roadway is forty-two feet between the curb. The Coliseum is now so arranged that all people who enter or leave the building must do so either on Locust Street or Grand Avenue. There is no exit or entrance on either the east or west side of the building. Locust Street, running immediately south of the Coliseum, is one of the main public streets of the city and is a paved street, with sidewalks both on the north and south sides. Grand Avenue is also a public street, paved and with sidewalks. The property immediately east of the Coliseum and this alley is owned by the city, and is used as a public park and fronts on the river. It has been graded and sodded, and a small structure erected called a pergola. This pergola is about ten feet high, and its west line is about six feet east of the Coliseum and about midway between Locust Street and Grand Avenue, and is thirty feet in radius. The alley was about sixteen feet wide. Prior to the time it was vacated, it was rough, full of rubbish, uneven, and unsatisfactory to

drive on, and was not used very much. The land lying between the river and the Coliseum and immediately east of this alley is laid out as a place for the gathering of people in the evening, and as an adornment to the river front. The pergola is made of wood and stucco, with a concrete base, and has electric lights, and the park is provided with seats as a resting place for tired people, and is devoted exclusively to park purposes. No other buildings than the pergola are erected on this site. The city has expended considerable money in beautifying this place and in constructing the pergola. The effect of the vacation of this alley, the erection of this pergola, and the devotion of this strip between the Coliseum and the river to park purposes, is to prevent the use of this alley by teams on the east side of the Coliseum. These are all the facts necessary to a proper determination of the controversy here.

This action is brought to declare void the ordinance above set out, and to enjoin the obstruction of the alley by the defendant. The cause was tried to the court and a decree entered for the plaintiffs, as prayed. From this, defendant appeals.

It is conceded that the city did not, at, prior, or subsequent to the passage of the ordinance vacating the alley in controversy, take any steps to ascertain the damages, if any, to the lots abutting on this alley, and did not pay or secure to the owners of such lots the damage, if any, they sustained by reason of the vacation of the alley. This last concession provokes the whole controversy. The plaintiffs contend that the owner of property abutting on the street or an alley has an interest in the street, distinct from his interest as a citizen, and this interest is private property which is protected by Art. 1, Sec. 18, of the Constitution, which reads as follows:

"Private property shall not be taken for public use without just compensation first being made, or secured to be made, to the owner thereof, as soon as the damages shall be assessed by a jury", etc.

It is claimed that this interest which an abutting property

owner has in a street or alley cannot be taken without first ascertaining and paying to him the damages, as provided in the Constitution; and it is claimed that, under this provision of the Constitution, where a street or alley is vacated, the ascertainment and payment of the damages must precede the act of vacation; and that any ordinance which undertakes to vacate a street or alley, without making provision for the ascertainment and payment of the damages, is void, as in contravention of the provisions of this article of the Constitution.

It is elementary that, under this provision of the Constitution, private property cannot be taken for public use until just compensation has been made or secured. The very first step in the taking of private property for public use is the ascertainment and payment of the damages which result to the property owner from the taking. This damage must be ascertained, paid or secured, before there can be a lawful taking of private property for public use. The question then is, Does the vacation of an alley constitute such a taking of private property of abutting owners that the act of vacation becomes unlawful unless the damages which may accrue from such vacation have been first ascertained, paid, or secured? The contention of the plaintiffs is that the city council had no power or jurisdiction to vacate until it had complied with this constitutional requirement.

It is proper first to determine what the powers of a city are over its public streets and alleys, what
1. MUNICIPAL CORPORATIONS: streets and alleys: plenary power to vacate. right it has in the same, and what power it has to establish or vacate. Sec. 751 of the Code provides:

"Cities and towns shall have power to establish, lay off, open, widen, straighten, narrow, vacate, extend, improve and repair streets, highways, avenues, alleys, public grounds", etc.

In *McLachlan v. Town of Gray*, 105 Iowa 259, this court said: "We understand the General Assembly has plenary power over streets and may vacate or discontinue the public

easement in them, and may invest municipal corporations
with this authority.'' This was an action to restrain the
vacation of a highway within the limits of the incorporated
town of Gray.

*Spitzer v. Runyan,* 113 Iowa 619, is an action in which
the plaintiff sued out a writ of certiorari to test the validity
of an ordinance passed by the city council, whereby certain
streets and alleys were vacated, and the land comprised
therein granted to the Burlington, C. R. & N. R. Co. In this
case, the court recognized the right of the city, not only to
vacate the streets and alleys, but to devote them thereafter to
other than public purposes. See also, *City of Marshalltown
v. Forney,* 61 Iowa 578; *Harrington v. Iowa Cent. R. Co.,* 126
Iowa 388; *City of Lake City v. Fulkerson,* 122 Iowa 569;
*Walker v. City of Des Moines,* 161 Iowa 215.

Therefore, we find not only that the statute confers, but
judicial authority recognizes, the right of a city or town,
through its proper council, to vacate or narrow a public
street or alley, and, having done so, it is invested with au-
thority to dispose of the land covered by the street or alley so
vacated.

We come next to inquire what is the right of the abutting
property owner in the street or alley, upon which he can
predicate a legal right to have it maintained *in statu quo.*

The fee of the street is in the city. The pe-
2. MUNICIPAL COR-  culiar right of the abutting property owner is
PORATIONS:
streets and al-  limited to the use of the street in connection
leys: vacation:
nondestruc-.  with his property. Of course, he has a com-
tion of ingress
or egress:  mon right with the public to the use of the
*damnum absque*
*injuria.*  street. As an abutting landowner, he may
have a distinct and different right. The plaintiffs, as abutting
property owners, have a right to a means of egress and in-
gress. The street or alley having been established by proper
authority, the right through that instrumentality of ingress
and egress is created. This is a substantial right, and, at
certain points abutting their property, of great value; at

other points, of practically no value.   To interfere with the
free and convenient use of ingress and egress, to shut off
access to their property entirely by the vacation of streets or
alleys, would be, in some instances, to destroy the value of
the property itself,—at least until such time as aerial naviga-
tion has been perfected.   There is no question, under the rule
laid down in this state, and as the law now stands, that the
vacation of a public street or alley may be a substantial injury
to the owner of abutting property, by the destruction of his
right to the larger and fuller enjoyment of his property,
resting in the existence of the street or alley.

In *Barr v. City of Oskaloosa*, 45 Iowa 275, it was held
that the abutting property owner could not recover damages
from a town or city, sustained by reason of the vacation of a
street or alley.   This decision stood as the law of this state
until the case of *Long v. Wilson*, 119 Iowa 267, in which it
was said:

"It may not be of importance to the general public
whether a particular street is vacated or not.   It is important
to the individual owner of abutting property that he shall be
able to get to and from his residence or business, and that the
public shall have the means of getting there for social or
business purposes.   In such a case, access to thoroughfares
connecting his property with other parts of the town or city
has a value peculiar to him, apart from that shared in by
citizens generally, and his right to the street as a means of
enjoying the free and convenient use of his property has a
value quite as certainly as the property itself.   If this special
right is of value,—and it is of value if it increases the worth
of his abutting premises,—then it is property, regardless of
the extent of such value",—citing authority.

This case quotes with approval from *Heinrich v. City of
St. Louis*, 125 Mo. 424, 427, as follows:

" 'There is no doubt but a property owner has an ease-
ment in a street upon which his property abuts, which is
special to him and should be protected.'   While the owner of

a lot abutting on a public street has the same right to the use of a street that rests in the public, he at the same time has other rights which are special and peculiar to him, and the right of ingress and egress is one of them. This right of access is appurtenant to his lot, and is private property. To destroy that right is to damage his property, and when this is done for the public good, the public must make just compensation.''

In that case, it is said that, conceding the power of the legislature, acting through municipalities, to vacate streets, and conceding that this power has been fully recognized by this court, yet it does not follow that the power may be exercised without compensating abutting property owners for the damages occasioned thereby.

*Borghart v. City of Cedar Rapids*, 126 Iowa 313, was an action to recover damages for the vacation of a public square, the effect of which was to obstruct all access by the way of the square to plaintiff's lots. The court in that case said:

''That this square was intended to be used in part, at least, as a street approach is manifest from the fact that some of the lots were platted facing it, and with no other means of access. . . . In so far as the street . . . was necessary to the free and convenient way for travel to and from the lot, her right to its use for that purpose was appurtenant to her premises, and essential to their enjoyment. The abutter has a right, in common with the community, to use the street from end to end for the purpose of passage; but, in addition to this common right, he has an individual property right, appendant to his premises in that part of the street which is necessary to free and convenient egress and ingress to his property. That this latter right is private and personal and unshared by the community, and cannot be taken away without answering in damages, is held by substantially all the authorities,''— citing authorities.

Further, in speaking of the act of vacation, the court said:

''As such destruction (that is, the vacation of the street)

is presumed to have been for the public good, the public must make just compensation for the property to the extent taken. As the authority of a city to vacate is conceded . . . her only recourse was an action for damages.''

*McCann v. Clarke County,* 149 Iowa 13, involved the right to recover damages for the vacation of a public highway. It cites with approval *Borghart v. Cedar Rapids, supra,* and *Long v. Wilson, supra.*

*Ridgway v. City of Osceola,* 139 Iowa 590, relied on by the plaintiffs, was an action to recover damages claimed to have been caused by the vacation of a street or alley abutting on plaintiff's property. In that case, it was held that, in so far as the damages are not different from those of the general public, no damages may be recovered; that if the owner still, after the vacation of the street, had free access to the property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with, no damages can be recovered.

It is the holding of this court, since the overruling of *Barr v. City of Oskaloosa, supra,* that an abutting property owner, whose right of ingress and egress has been cut off or substantially interfered with by the vacation of a public street or alley, has a right of action against the city for any damages which he may sustain by such vacation.

It is argued that the city, by accepting the street, assumed an obligation to keep it open and to afford to the dedicator, or his grantees, access to the property abutting upon the street; that this duty to keep it open is clearly implied from the dedication and acceptance; that although, by virtue of the statute, the city has power to vacate the street, yet it cannot do so without compensating the abutting property owner for the damages which may result to him from such vacation; that the right to ingress and egress is a vested right in the property owner and is of value, especially if the value of his property is increased by the existence of the street and decreased by its vacation; that if the existence of the street

increased the worth of his property, then this right to have it open is property in itself; and that the vacation of the street, which takes away this right of ingress and egress, is, in itself, the taking of property within the constitutional inhibition, and cannot be taken away without compensation. It was, however, said in *Ridgway v. City of Osceola, supra,* that, in so far as the damages are not different from those of the general public, no damages may be recovered from the city on account of the vacation of the street; that if the owner still has free access to his property and to the improvements thereon, and his means of ingress and egress are not substantially interfered with, no damages may be recovered.

In this *Ridgway* case, it was strongly contended that the rule in *Barr's* case should prevail; that no damages should be allowed even though the vacation did have the effect of preventing egress from and ingress to the property; that no damages could be allowed for the vacation of the public street. What was said in the *Ridgway* case was in answer to the contention that the rule in *Barr's* case should prevail. But, whatever the purpose may have been, it still remains established as the law of this state that an abutting property owner, whose right of egress and ingress has been substantially interfered with by the vacation of a public street or alley, has the right of action for damages which may result to him personally by such vacation, and it does not matter whether you call it an easement in the street, a vested right to the use of the street, or a claim for damages. This court is committed to the doctrine that he is entitled to recover if the free access to his property and the improvements thereon, through the street and by means of the street, has been substantially interfered with. The court summed up its conclusion in the *Ridgway* case, *supra,* by saying:

"Suffice it to say, that a street or alley may become so appurtenant to abutting property that it cannot be vacated without paying compensation to the owner of that property."

This brings us to the real matter in controversy in this

case. It is clear that all the effect that the vacation of the alley in the instant case could have upon plaintiffs' property rights is to interfere with the ingress to and egress from their property, from and to this alley. At the present time, there are no means provided for ingress to or egress from this alley, nor was any such provision made, or attempted to be made, at the time this ordinance was passed. The building extends from Locust Street to Grand Avenue. It is so constructed that all the entrances to the property and exits from the property are upon Grand Avenue or Locust Street, on the north and south ends of this building. The vacation of this alley does not, as this record discloses, substantially interfere with the full enjoyment of all means of access to this property which have been provided or were in existence at the time the ordinance was passed.

We might hold, under the authorities heretofore referred to, that, by the vacation of this alley, there was no substantial invasion of any right of the plaintiffs upon which they could predicate any right for damages. Their egress and ingress have not been substantially interfered with. The Coliseum was constructed as a gathering place for people. The main floor is so arranged that there are booths along the east and west sides. The center is open. Above these booths on the east and west sides are galleries with seats. On the south end, there are also galleries with seats. All exits from these galleries lead to the south, or to Locust Street. There are no doors or entrances or exits on the east side of the building. The Coliseum is used in a general way for convention purposes and for concerts. There are many small windows on the east side of the building. The lowest window is about ten feet above the ground. The building is about forty or fifty feet in height, and occupies the entire length of the alley on the east from Locust to Grand Avenue.

We might stop here on the holding that the vacation of this alley has not affected any substantial right of the plaintiffs of exit from or ingress to their property; that whatever

right they have been deprived of by the vacation of the alley is a right to use the alley in common with the general public. Proper exits and entrances have been left unobstructed. The exits and entrances provided have not been interfered with. The full enjoyment of the use of the property has not been obstructed. Ample provision has been made for exits and entrances on the north and south, which have not been interfered with. There is no substantial evidence of any damages sustained by the plaintiffs. The record does not disclose the interference with any substantial right of exit and entrance. The mere expression of the opinion that the property has been damaged is not substantial proof against the physical fact that no damage has resulted.

We are not disposed, however, to stop the consideration of' the case at this point. Concede, for the purpose of this case, that future conditions may arise in which it may be necessary for the plaintiffs, in the proper en-

3. MUNICIPAL COR-
PORATIONS:
streets and al-
leys: vacation:
power not con-
ditioned on
prior payment
of damages:
constitutional
law.

joyment of their property, to have exits and entrances on the east; that such exits and entrances can be provided in the building as it now stands; concede that the property may not always be used for the purpose to which it is now put, and that the vacation of this alley may interfere with the use of the property, when put to a different purpose from that to which it is now devoted; yet we cannot concur in plaintiffs' contention that the plaintiffs are now damaged, and that this damage must be first ascertained and paid before the alley can lawfully be vacated.

If, by the vacation of this alley, plaintiffs have sustained actual, measurable damages, the question still arises whether these damages are of such a character that, under the provision of the Constitution heretofore recited, they must *first* be ascertained and paid, or secured, before the alley is actually vacated. That the plaintiffs might be entitled to damages may be conceded, but is it such damage as must be *first* paid, or secured, before the alley is vacated? On this

question, courts are not agreed, and the disagreement arises largely, if not entirely, from the different wording of this constitutional provision. Some of the states have provided that private property shall not be taken or *damaged* for public use without just compensation's being first made, or secured to be made. Our Constitution does not provide that private property shall not be *damaged* for public use, without compensation's *first* being made. The constitutions of these several states originally provided as ours provides. They were subsequently amended by adding the word "damaged" to the word "taken".

It must be conceded that no physical, tangible property was taken by the vacation of this street. The most that can be said for the plaintiffs' claim is that plaintiffs' property is or may be damaged by the action of the city in vacating the street. But concede, for the sake of argument, that plaintiffs' property did suffer some damage from the exercise of the power granted to the city to vacate this alley, yet does the constitutional provision above referred to, and the inhibition therein contained, cover the question of damages to property? Many of the states where it is held that the damages resulting from the vacation of a street must be first ascertained and paid or secured, are states in which the Constitution provides, as a condition precedent to the vacation, that the damages must first be ascertained and paid.

As said in *Louden v. Starr*, 171 Iowa 528:

"There is a difference between the vacation of a public street and damages incident thereto, and the taking of private property for use as a public street. In the taking of private property for a street, the injury is direct, immediate, and ascertainable at once, and the constitutional provision applies, and compensation must be first made. But in the vacation of a street, the damages are not direct, immediate, or at once ascertainable. In fact, the vacation of a street may be a direct benefit to abutting property owners. The damages, in such case, are merely consequential, and, though recoverable

in an action against the city, it is not necessary that they be
first ascertained and paid.''

We think that in none of the states, where the Constitu-
tion is silent as to damages, has it been required that com-
pensation *first* be made before the damages are inflicted.

In the case at bar, the damages, if any, are such as may
result from a change in the use of the property, and cannot
be ascertained or determined with any degree of accuracy at
this time, and as a rule, where the constitution does not pro-
vide for having the damages ascertained and paid before the
street is vacated, the party suffering damages, if any, is left
to his legal remedy to recover his damages.

*Parker v. Catholic Bishop of Chicago*, (Ill.) 34 N. E. 473,
was an action in which the plaintiff sought to enjoin the city
of Chicago, and to have declared void an ordinance vacating
a public street. It was there contended that it was a condition
precedent to the vacation of the street that the damages to
complainant's lot be first ascertained and paid. The court
said: ''The municipality holds the streets and alleys of the
city in trust for the general public, and by the statute is
given power to vacate the same whenever the public interest
or convenience, in the exercise of a reasonable discretion,
shall seem to such authority to require it.'' It was further
held in that case that it was immaterial to the exercise of this
right whether the streets were owned in fee by the city, or
whether the rights reverted to adjoining property owners upon
its vacation, and it was said:

''A question of more difficulty arises upon the second con-
tention made. It is insisted . . . in the bill that the
vacation of the alley deprived the complainant of a valuable
property right, which she would otherwise enjoy as appur-
tenant to her lots, and that if said alley was vacated for a
public use or purpose, it damaged her property, and she was
therefore entitled to compensation. While private property
cannot be taken by public authority for private use, it may
be taken or damaged for a public use upon payment of just

compensation, to be ascertained by a jury in the mode pre-
scribed by law. Const., Art. 2, Sec. 13. It seems to be well
settled in this state that, where no part of the land or property
of the complaining owner is physically taken for or in making
the proposed public improvement, and the damages claimed
to result are, therefore, consequential only, this provision
of the Constitution does not require the ascertainment and
payment of such damages as a condition precedent to the
exercise of the right or power. *Stetson v. Chicago & E. R.
Co.*, 75 Ill. 74, 76; *Patterson v. Chicago, D. & V. R. Co.*, 75
Ill. 588; *Peoria & R. I. R. Co. v. Schertz*, 84 Ill. 135; *Penn
Mut. L. Ins. Co. v. Heiss*, 141 Ill. 35. It seems to be sufficient
to answer the constitutional requirement that a remedy is
provided for the recovery of such damages; and the same
construction was given in the *Stetson* case, *supra,* to the word
'damaged', as employed in the act to provide for the exercise
of eminent domain. It was there held, and it has been re-
peatedly since followed, that the damages there referred to
were direct and physical, resulting from a taking of a portion
of the land, and that where no portion of the land was taken,
the damages suffered are consequential, and that condemna-
tion proceedings were not required to be instituted to ascertain
the same.

"It is, however, insisted that, although no portion of com-
plainant's property was physically taken, by Sec. 1, Ch. 145,
of the Revised Statutes, the city council were required to
ascertain and pay to complainant the damages to her prop-
erty, resulting from the vacation of the alley, and, not having
done so, the ordinance is void. That section is as follows:
'That no city council of any city . . . whether incor-
porated by special act or under any general law, shall have
power to vacate or close any street or alley, or any portion
of the same, except upon a three-fourths majority of all the
aldermen of the city . . . And when property is dam-
aged by the vacation or closing of any street or alley, the
same shall be ascertained and paid as provided by law.'

"It is urged that the latter clause requires, as a condition
to the vacation or closing of a street or alley, that damages
be ascertained and paid.   It cannot be, however, that the
legislature intended that in all cases there should be a judicial
determination as to whether all the property lying adjacent
to, or that might in a remote degree be affected by the closing
of the street or alley, was damaged or not.   It is only 'when
property is damaged by the vacation or closing of any street
or alley' that the same is to be ascertained, as provided by
law.   It is apparent, we think, that discretion is vested in the
municipal authorities to determine in the first instance,
whether property will or will not be damaged by the proposed
vacation or closing of the street or alley. . . . The pre-
sumption is that the city council, being clothed with govern-
mental functions, will discharge its duty as required by law,
and that, where property is damaged by the proposed vacation
or closing of any of the streets or alleys of the city, they will
ascertain and pay the damages as required; and this presump-
tion will obtain until the property owner has, in an appro-
priate action, established his right to damages, and the
property owner will, where no proceedings have been insti-
tuted by the municipality to ascertain his damages, be re-
mitted to his remedy at law for recovery of the same.   The
determination of the city authorities cannot, however, be con-
clusive upon the property owner.   He will be entitled to
his day in court to recover, in an appropriate action at law,
all such special damages to his property . . . as will be
occasioned by the proposed vacation."

In *Vanderburgh v. City of Minneapolis*, 108 N. W. 480, we
find the Minnesota court holding against plaintiff's conten-
tion.   This was an action to recover damages alleged to have
been occasioned to plaintiff's property by the vacation of cer-
tain streets.   This case was decided on three propositions:
(1) Whether the plaintiff, as respects the property there in-
volved, has suffered injury and damages by the vacation of
the street different in kind from that suffered by the general

public, and is entitled to compensation under the provisions of the Constitution of the state, which forbids the taking or *damaging* of private property for public use without compensation's first being made or secured; (2) whether, in view of the fact that compensation was not made by the city at the time the council adopted the resolution vacating the street, action in vacating the same is valid; (3) whether the vacation of the street was a taking or damaging of plaintiff's private property for public use. The court, in passing upon this question, said:

"A property owner's special right in such cases is not limited to the part of the street on which his property abuts; his right in this respect is the right of access in any direction which the street permits, and as affecting the same, no distinction can be drawn between a partial and a total destruction. The impairment of the lot is a legal injury, differing in degree only from its total destruction. In *Indiana, B. & W. R. Co. v. Eberle*, 110 Indiana 542 (11 N. E. 467, 59 Am. R. 225), the court said: 'The interest in the street which is peculiar and personal to the abutting lot owner, and which is distinct and different from that of the general public, is the right to have free access to his lots and buildings, substantially in the manner he would have enjoyed the right in case there had been no interference with the street.' In *Bigelow v. Ballerino*, 111 Cal. 559, 563 (44 Pac. 307), the court said: 'That the owner of property abutting on a public street has an easement in the street, distinct from the public right of way, which easement is property, and for an injury to this easement, the owner is entitled to compensation, under the constitutional guaranty that private property shall not be taken or damaged for public use without due compensation,' " —citing further authority.

The court then proceeds:

"Analogous cases in this court, sustain plaintiff's right to compensation. It was held, in *Adams v.* (C., B. & Q.) *Railway Co.*, 39 Minn. 286, that the owner of a lot abutting on a

public street has, as an appurtenance to the lot and independent of his ownership of the fee in the street, an easement in the street to the full width thereof, which easement is subordinate only to the public right, and that any act of the public authorities which materially deprives him or materially interferes with the enjoyment of his easement is a taking of private property within the meaning of the Constitution,'' —citing authorities.

The case then proceeds: ''In the case of *Aldrich v. Wetmore*, 52 Minn. 164 (53 N. W. 1072), the court held that to entitle a party to maintain a private action for an obstruction of a public street, it was unnecessary for him to show that he was cut off from all access to his property; that it was the nature of the right affected, and not the number who suffered from the wrongful obstruction in the street, which determined the question whether an action for damages will lie.'' This case holds that if an abutting lot owner suffers damage peculiar to himself by the vacation of a public street or alley, he is entitled to recover compensation. The court, however, says that ''the learned court below adopted this view of the law, but held further that the action of the city council in attempting to vacate the street in question was a nullity, because no compensation was previously, or at all, paid or secured to plaintiff for the injury resulting therefrom. There is much force in this position, for it is the generally accepted doctrine of all the courts that, under constitutional provisions like ours, where private property is taken for public use, payment of compensation is a condition precedent to the validity of the act of expropriation. . . . But the courts have excepted from this general rule cases of the character of that here under consideration. If we were to follow the general rule on the subject, and hold that, because plaintiff's damages were not previously ascertained and paid, the action of the council in vacating the streets was void, it might cause much litigation and confusion in the cities and other municipalities of the state. No doubt many streets and alleys have heretofore been

vacated under circumstances precisely like those shown in this case, no compensation by way of damages having been ascertained or paid. For this, and the further reason that the exception to the general rule, though perhaps not logical, is reasonable and sufficiently protects all persons claiming damages, we feel constrained to adopt it as the law of this state, and thus obviate possible difficulties in other like cases. The damages for injuries of this nature, where no property is actually taken, are consequential, not direct; no person is actually deprived or dispossessed of his property, and the authorities hold that prepayment is unnecessary. The damages in such cases may be recovered against the municipality.''

See also, *Clemens v. Connecticut Mutual Life Ins. Co.,* 184 Mo. 48, 60 (82 S. W. 1, 105 Am. St. 526). In that case it is said:

''In our opinion, the Colorado, Illinois, West Virginia and Louisiana courts correctly construe Sec. 21, Art. 2, of our Constitution [this article of the Constitution of Missouri is the same as ours, except that it provides for the payment of damages] in holding that where the property of a citizen is not taken, and his proprietary rights not disturbed, but the damage to his property is purely consequential, he is not entitled to have the same ascertained and paid before the proposed public work is done. . . . Having reached this conclusion, we hold that, whether plaintiff was an abutting owner or not, he was not entitled to have the improvements which were being made pursuant to an ordinance of the city, and clearly within its charter powers, enjoined. . . . that if he has any cause of action, it is against the city for damages.''

The Supreme Court of Louisiana, in *McMahon v. St. Louis, A. & T. R. Co.,* 41 La. Ann. 827, 829, said:

''It is true the Constitution, Art. 156, provides that 'Private property shall not be taken nor damaged for public purposes without adequate compensation being first paid.' We will not say what might be the effect of this article

. . ., if the act prohibited involved the *taking* of property, the value of which might be settled in advance. But in this case there is no *taking* of plaintiffs' property . . . The damages claimed are purely consequential in their nature, necessarily conjectural, and impossible of any accurate determination except after the construction of the road. To impose upon parties the necessity of settling and paying such damages before proceeding with the work would be to require a manifest impossibility.''

See also *Denver & S. F. R. Co. v. Domke,* 11 Colo. 247 (17 Pac. 777). This case cites with approval *Parker v. Catholic Bishop of Chicago, supra; Spencer v. Point Pleasant & O. R. Co.,* 23 W. Va. 406; *Lorie v. North Chicago R. Co.,* 32 Fed. 270; *Morris v. City of Philadelphia,* (Pa.) 49 Atl. 70. As holding to a contrary doctrine, see *Pearsall v. Board of Supervisors,* (Mich.) 42 N. W. 77; *Horton v. Williams,* (Mich.) 58 N. W. 369; *Steinhart v. Superior Court,* (Cal.) 70 Pac. 629; *State ex rel. Smith v. Superior Court of King's County,* (Wash.) 66 Pac. 385; *Livingston v. Board of Commissioners,* (Neb.) 60 N. W. 555.

In vacating a public street, the damages to abutting property owners are of necessity consequential. Sometimes the vacation of a street may be a direct benefit to the property owner. Property owners often petition for the vacation of a street. The mere act of vacation, in itself, may or may not cause damage to abutting property owners. The damages from the vacation may come to abutting property owners only by reason of the use to which the vacated street is put. The location of the street in relation to the property, the use to which the property is put, at the time of the vacation, may negative any idea of damage. The damages cannot always be ascertained before the vacation of the street. It is unlike the actual taking of the physical property. We do not think the vacation of a street is the taking of private property in contemplation of our Constitution. A different question might arise if the Constitution provided for compensation's

*first* being made in case of damage to private property for public use. If this constitutional provision were broad enough in its terms to cover damages, there surely would have been no need to amend the Constitution in these other states so as to cover the question of damages due to the vacation of a street.

We are not unmindful of the fact upon which some of the argument for the plaintiffs is based—that, in many of our own cases in which the right to recover damages for the vacation of a street is involved, this court sail that the abutting property owner has an easement in the street; that his right to use the street is a right appendant to his property, and is, in itself, property, for the taking of which he is entitled to damages. Upon these decisions, the argument proceeds to the conclusion that, this right of an abutting property owner in the street to have the street maintained being appendant to his property, and an easement, and in itself property, for the taking of which he is entitled to damages, the taking of it is the taking of property in contemplation of the constitutional provision, which cannot be done without first making compensation.

The question as to when compensation for damages shall be made, in case a street is vacated, has never been determined by this court directly. The question is new, so far as this court is concerned. It is therefore open to us to choose, between conflicting decisions, the better rule; the one most just and equitable in its application; the one that will not, in itself, affect vested rights and disturb existing conditions. Much of what has been said in previous cases was said at a time when there was involved the question as to whether or not an abutting property owner was entitled to recover anything on account of the vacation of the street, and the language used must be interpreted and understood in the light of what was then before the court for determination. The most that this court has determined, up to date, is that the plaintiffs are entitled to an action at law to recover damages.

The question as to whether these damages should be first ascertained, paid, or secured was not, at any time, before this court, and was never determined before this time.

We are inclined to think that the better rule is the one adopted by the Minnesota and Illinois courts. These rules were adopted under a constitution broader than ours, and, therefore, for the reason heretofore stated, and for the reasons submitted in those cases, we think that the abutting property owner ought to be relegated to an action at law to recover his damages and that the city ought not to be required to ascertain and pay them before an ordinance is adopted vacating the street. There may be many abutting property owners on the street vacated. Many of them may suffer no damage; many of them may suffer but slight damage; many may be entitled to large damages; yet, if plaintiffs' contention be right, if the city council failed to proceed, under the law governing the right to condemn property for public purposes, to ascertain and pay the damages, before the right to vacate was complete, much expense and labor would necessarily be incurred in instances where no one suffered any damage by reason of the vacation, and yet, without the institution of condemnation proceedings, this ordinance would be void. If the right to vacate a street is dependent upon the duty of the city to have the damages ascertained and paid before the right to vacate is complete, then, in every case where the city seeks to vacate a street or alley, such condemnation proceedings must be instituted, although, in the judgment of the city council, acting for the city, no private rights are invaded, no exit or entrance to private property obstructed; and this, too, where it is apparent that, at the time of the vacation, the abutting property owner suffers no damage that is ascertainable or measurable, and where the damage, if any, is such as may result only in the future from the use to which the vacated ground is subsequently put, or is occasioned by a change in the use by the occupant of the premises abutting.

We think the better rule is to require the abutting prop-

erty owner, whenever damages accrue to him which are ascertainable, to proceed, as in other cases, to recover his damages by an action at law. By this holding, he is deprived of no legal right to have full compensation for any wrong that is done him in the way of damages, whether it accrue immediately upon the vacation of the street, or subsequently by the use to which the vacated ground is put. Every rule ought to be as broad as the conditions that invoke it, and ought to be broad enough to secure substantial justice to the parties. No rule ought to be broader than the necessity requiring its adoption.

On the whole record, we think there is no equity in plaintiffs' contention, and the case ought to be and is—*Reversed.*

WEAVER and PRESTON, JJ., concur.

DEEMER, C. J., LADD and EVANS, JJ., specially concur.

SALINGER, J., dissents.

DEEMER, C. J. (specially concurring.)—Several propositions involved in this case are already well settled by previous decisions; and the only matter open to discussion, as I view it, is whether or not, by reason of constitutional or other prohibition or limitation, a city or town or a board of supervisors is bound in all cases or in any case, before vacating a street, alley or highway, to institute a condemnation or other proceeding in order to ascertain the damage done to abutting property and, before the vacation is awarded, to pay or secure to the abutter the amount so ascertained.

If there be any such provision, it is found in the Constitution, and is known as Sec. 18 of Art. 1 of the Bill of Rights, reading as follows:

"Private property shall not be taken for public use without just compensation first being made, or secured to be made, to the owner thereof, as soon as the damages shall be assessed by a jury, who shall not take into consideration any

advantages that may result to said owner on account of the improvement for which it is taken.''

This article differs from similar ones found in many other state constitutions, in that it applies only to property taken, and does not expressly cover property not taken, but merely damaged by the taking of other property. The statute law of the state authorizes and permits the proper authorities of the state, as cities and towns, to vacate streets and alleys without providing for the ascertainment or payment of damages in advance of the vacation; and it is everywhere held that the question of vacation is primarily legislative in character and will not be reviewed, except, perhaps, where the action of the council is arbitrary or there has been a clear abuse of the discretion lodged in that body. See *Walker v. City of Des Moines,* 161 Iowa 215; *Spitzer v. Runyan,* 113 Iowa 619; *McLachlan v. Gray,* 105 Iowa 259.

Again, in this state, under our decisions, a street or alley so vacated may thereafter be conveyed to a private individual, under Sec. 883 of the Code. *Spitzer v. Runyan, supra; City of Marshalltown v. Forney,* 61 Iowa 578; *Harrington v. Iowa Cent. R. Co.,* 126 Iowa 388; *City of Lake City v. Fulkerson,* 122 Iowa 569; *Tomlin v. Cedar Rapids & Iowa City Railway & Light Co.,* 141 Iowa 599. By our more recent cases, which overruled some prior ones, all abutting property owners who suffer some special damage, different in kind rather than in degree from those sustained by the general public, may have compensation for such damages as are actually done to his property in its then condition. *Ridgway v. City of Osceola,* 139 Iowa 591; *McCann v. Clarke County,* 149 Iowa 13; *Long v. Wilson,* 119 Iowa 267; *Borghart v. City of Cedar Rapids,* 126 Iowa 313; *Sutton v. Mentzer,* 154 Iowa 1. But none of these cases, and no others with which I am familiar, hold that all property abutting upon a street or alley is especially damaged by the vacation thereof, as is the case where the physical property of one is taken for a public use. Where property is taken, rather than damaged, for public use, there

must be compensation paid or secured in advance; for, of course, the owner from whom it is taken is damaged to the extent of the value of that property. But where the property is not taken, and there may or may not be damage due to a change in the public use of what has theretofore been taken, there is no taking, but simply damage due to change in use.

The first question, then, in the case is whether or not plaintiff suffered damage different from that suffered by all people who might use the alley before its vacation. It is not claimed that the alley was actually used for ingress to or egress from the building. The building was not so constructed that it could be entered from the alley, and the only exits and entrances were on Grand Avenue and Locust Street; so that the damages, if any, from the closing of the alley were not different in kind from what they would have been had the first street running north and south immediately west of the block in which the Coliseum is located been vacated. Neither afforded a direct entrance to the building, and the damage in either event was the same as that suffered by the public in general, save in degree. In other words, while the alley abutted on the lots on which the Coliseum was located, it was not made an appurtenance to the building and did not, any more than any other street or alley in the vicinity, afford a means of access to the building. This was the situation when the vacation of the alley was made, and it seems to me that the damage, if any, which the owners of the lots suffered was *damnum absque injuria,* and that no action would lie to recover damages by reason of the vacation. This seems to be the general holding of the courts. *Freeman v. City of Centralia,* (Wash.) 120 Pac. 886 (67 Wash. 142, 29 Ann. Cases 786, 787); *Heller v. Atchison, T. & S. F. R. Co.,* 28 Kans. 625; Dillon on Municipal Corp., (5th Ed.) Vol. 3, Sec. 1160; *Borghart v. City of Cedar Rapids,* 126 Iowa 313; *Hall v. City of Lebanon,* 31 Ind. App. 265 (67 N. E. 703); *Dempsey v. City of Burlington,* 66 Iowa 687; 2 Elliott on Roads and Streets (3d Ed.) Sec. 1181; *Hall v. Atlanta, B. & A. R. Co.,*

(Ala.) 48 So. 365; *Canady v. Coeur D'Alene Lumber Co.,* (Idaho) 120 Pac. 830; *Van Valkenberg v. Rutherford,* (Neb.) 139 N. W. 652; *Newark & B. R. Co. v. Town of Montclair,* (N. J.) 85 Atl. 1028; *In re Goldman,* 132 N. Y. Supp. 607; *Williams v. Carey,* 73 Iowa 194; *Dantzer v. Indianapolis Union R. Co.,* (Ind.) 39 N. E. 223; *Horton v. Williams,* (Mich.) 58 N. W. 369; *Harrington v. Iowa Central Railway Co.,* 126 Iowa 388; *Enders v. Friday,* 78 Neb. 510 (111 N. W. 140, 15 Ann. Cases 685); *Littler v. City of Lincoln,* 106 Ill. 353; *Smith v. City of Boston,* 7 Cush. (Mass.) 254; *Fearing v. Irwin,* 55 N. Y. 486; *Buhl v. Fort St. U. Depot Co.,* (Mich.) 57 N. W. 829; *Cram v. City of Laconia,* (N. H.) 51 Atl. 635 (57 L. R. A. 282); *Ridgway v. City of Osceola,* 139 Iowa 590; *Parker v. Catholic Bishop of Chicago,* (Ill.) 34 N. E. 473; *Natick Gaslight Co. v. Inhabitants of Natick,* (Mass.) 56 N. E. 292; *Kimball v. Homan,* 74 Mich. 699 (42 N. W. 167); *Van Wagenen v. Cooney,* (N. J.) 16 Atl. 689 (45 N. J. Eq. 24); *Perkins v. Ross,* (Tenn.) 42 S. W. 58; *Gerhard v. Seekonk River Bridge Com.,* 15 R. I. 334 (5 Atl. 199); *Jackson v. Birmingham F. & M. Co.,* (Ala.) 45 So. 660; *Whitsett v. Union Depot & R. Co.,* (Colo.) 15 Pac. 339; *Ellsworth v. Chickasaw County,* 40 Iowa 571; also cases cited in Lewis, Eminent Domain (3d Ed.), Sec. 202, p. 380, and Sec. 206, p. 388. If damages be awarded in a suit at law, they will be with reference to the present use of the property; although, as the vacation will be assumed to be permanent, both past, present and future damages may be awarded. But it is damages to the property as it then stands, and not as it might possibly be used in the great future. In other words, the damages should be assessed with reference to the present improvement of the property, and not with reference to how it might be improved in the future, were the present building removed or destroyed: this for the reason that it is conceded that the legislature had the power to grant municipalities the right to vacate streets or alleys.

If, then, one improves with reference to an alley or

street, he may in some cases recover damages if it be vacated, and the damages must be based upon the condition of the property when the damage is inflicted, and not upon some possible future use. His acceptance of an easement in the street and alley is only to the extent that he indicates that he wishes to use it; and after such acceptance, he cannot have damages awarded on the theory that at some future time he might want to use it in some other manner. He must take notice that, after such acceptance, the city may conclude to vacate the street or alley, as it has the undoubted right to do, and if it does this before he makes the change, it is with his eyes open, and he can be recompensed only for the damage done his property at the time of the vacation. If, at that time, he has made no such use of it as to utilize the street or alley, and is not damaged because of that fact, he cannot be heard to say,—"Well, although I am not damaged now at all, I may sometime in the remote future be damaged if I conclude to improve the property so that I may be damaged." Such damage would be wholly remote, speculative and contingent and could not be awarded in a suit for damages. If, in other words, one has so improved his property as not to use an alley for ingress or egress or any other legal purpose except to have a paper alley, he cannot recover damages because, at some remote future time, he may change his improvements so as to need this ingress or egress. In this respect, the case differs essentially from one where physical property is taken. The right to vacate after improvements are made is conceded; and if, when vacation is made, no damages are done, none may be awarded upon the theory that, at some future time, it is possible that a damage will be done. This is clearly pointed out in *Manda v. City of Orange,* (N. J.) 29 Ann. Cases 581; *Selden v. City of Jacksonville,* (Fla.) 14 L. R. A. 370; *Fairbanks v. Fitchburg,* 110 Mass. 224, and *Pinkham v. Chelmsford,* 109 Mass. 225.

I am quite clear that the testimony in this case shows no damage to the plaintiffs which is different in kind from that

suffered by the general public, and that they have no right to recover because, at some future time, they may so improve the property as that the alley would be useful to them. Aside from this, assuming, as we must, that the city was expressly given the power to vacate the alley, and conceding that the power is primarily legislative in' character, it is apparent that, if the council acted without having damages assessed, it was on the theory that there were no damages to be assessed, and plaintiffs, in order to be entitled to any relief, must affirmatively show that there was such damage. This they have failed to do. But assuming that they have done so, they are not, in my opinion, entitled to have the vacation ordinance held invalid and to an injunction against the obstruction of the alley. This proposition is sustained by *Parker v. Catholic Bishop of Chicago*, (Ill.) 34 N. E. 473 (146 Ill. 158), in a learned opinion by Shope, J.

The remedy in such cases, as is pointed out in the opinion, is by an action at law for damages; and this is all that is held in our previous cases with reference to the recovery of damages for the vacation of a street or highway.

As pointed out in the majority opinion, there was no taking of any of plaintiffs' property. What was done amounted merely to a change in the use of property already taken for a public use, and the title to this property was already in the public. The damage to plaintiffs' property, if any, was wholly consequential, and there was no direct taking. The act of the city was especially authorized by the legislature and was clearly within its power. There is no claim that the vacation was arbitrary or in bad faith, and the only question remaining is, Is the statute authorizing the vacation without provision for compensation in advance to abutting property owners unconstitutional and void? It seems to me that it is not, for the reason that there is no presumption of damage to any property from the vacation of a street or alley. Whether or not there was any such damage depends upon the proof, and the damage does not result from

a taking, but at best from some injury done to the property arising out of a change in the use of property already taken. If appellees are right in their contention, then no vacation can be made of any street or alley without calling a sheriff's jury to estimate damages, although no property may in fact be damaged in the least. The constitutional provision upon which reliance is placed does not, in my opinion, cover the case. This conclusion does not necessarily depend upon the proper definition of the word "taken", as found in our Constitution. I am inclined to the view, however, that our Constitution does not refer to consequential injuries or damage to property where the property itself is not taken. This matter is fully and learnedly treated in Nichols on Eminent Domain, Secs. 52 to 56, inclusive. The author reaches the conclusion that *Eaton v. B. C. & M. R. Co.*, 51 N. H. 504, relied upon by appellees' counsel, and which is the basis of all decisions of that kind, is fallacious; and he undertakes to demonstrate the same by a reference to practically all the English and American cases.

I need not do more than quote from a decision of the Supreme Court of the United States in support of this view (*Transportation Co. v. Chicago*, 99 U. S. 635), in which the court said:

"But acts done in the proper exercise of governmental powers, and not directly encroaching upon private property, though their consequences may impair its use, are universally held not to be a taking within the meaning of the constitutional provision. They do not entitle the owner of such property to compensation from the state or its agents, or give him any right of action. This is supported by an immense weight of authority. The extremest qualification of the doctrine is to be found, perhaps, in *Pumpelly v. Green Bay Co.*, 13 Wall. 166, and in *Eaton v. Boston, C. & M. Railroad Co.*, 51 N. H. 504. In those cases it was held that permanent flooding of private property may be regarded as a 'taking'. In those cases there was a physical invasion of the real estate of the

private owner, and a practical ouster of his possession. But in the present case there was no such invasion. No entry was made upon the plaintiffs' lot. All that was done was to render for a time its use more inconvenient."

In Nichols' work (page 59) will be found a large number of cases sustaining this view.

The gist of the contention is that, where property already devoted to a public use is put to some other one which is also public, resulting in consequential damages to other property, there is no taking. This view is sustained in *Talcott v. City of Des Moines*, 134 Iowa 113, and *Long v. Wilson*, 119 Iowa 267. The authorities from other states are conflicting, and many cases might be cited in support of appellees' contention; but as I view it, the plaintiffs were not, under this record, entitled to have the vacation ordinance declared invalid or to have any obstruction in the alley removed. Their remedy, if any, was an action at law for damages. I therefore concur in the conclusion reached by the majority.

EVANS, J.—I concur with the majority on the decisive proposition. That is to say, I think that plaintiffs have their only remedy in an action for damages for the vacation of the alley. The act of vacation, therefore, was not void. I do not assent to the view that a lot owner's right and measure of damage is necessarily limited and controlled by his actual present use of the property. Nor do I think that it should be said, as a matter of law, upon this record, that plaintiffs have suffered no damage by reason of the vacation of the alley. The facts appearing herein are not such as to preclude an issue before a jury.

LADD, J., limits his concurrence in accordance with the opinion of EVANS, J.

SALINGER, J. (dissenting).—I. The majority holds that the vacation of the alley in question has not substantially interfered with ingress to and egress from appellees' abutting

property; that, even 'if the contrary be true, this gives no more than the right to sue for damages, and does not base their suit to enjoin obstructions of the alley and abate one already put in; that the provision of our Constitution which requires payment before taking private property for public use does not apply; and that when we said repeatedly that it does apply, we indulged in mere *dictum*. From this I am constrained to dissent, because:

(1)   As I view it, the record shows, conclusively, that existing ingress and egress were substantially affected.

(2)   If our own decisions settle that what was done in this case is a taking of private property for public use, our Constitution settles that compensation must first be made, and decisions in other states to the contrary are of no avail.

The controlling question is, then, whether we have thus settled the law. The majority concedes that we have often *said* that the taking at bar was one to which the constitutional requirement applies. I firmly believe we have not only said, but have *decided* so. My dissent is induced largely because I am unwilling to join in continuing a practice of so dealing with our decisions as that the profession is constantly confronted with what seem to be hopelessly conflicting pronouncements—distinctions without reason, which are purely media for accomplishing the temporary overruling of a case, and at the same time permitting it to stand, apparently— a method by which our decisions are law in one case and not law in another. Whenever convinced that our said decisions ought to be overruled, I will vote that they be. But so long as they stand, disregarding them by indirection confuses the law and disobeys the Constitution, and I must decline to help do either.

*En passant,* it may be not amiss to point out that much upon which the majority relies deals with constitutions differing from ours in that there is no requirement that compensation be *first* made; other cases are based on the proposition that, in cases like the one at bar, the owner suffers no

injury except in common with the general public, a doctrine which we have. expressly repudiated, and which the majority still repudiates. Still others excuse disobeying the Constitution because it is more convenient than obeying.

II. The elaborately fortified statement that the city has power to vacate alleys is true but immaterial, and it will conduce to clarity to eliminate it now. The power is conceded. *Ridgway's* case, 139 Iowa 590, 591; *Long's* case, 119 Iowa 267, 270. The propriety of vacation cannot be reviewed unless discretion is abused. *Walker's* case, 161 Iowa 215. But that there is power to vacate will not exempt from liability those who exercise it if they seriously obstruct access to plaintiffs' property and impair its value. *Long's* case, 119 Iowa 267, 270; *Griffin v. Shreveport & A. R. Co.*, (La.) 6 So. 624; *Baltimore & P. R. Co. v. Fifth Baptist Church,* 2 Sup. Ct. Rep. 719; *Cook v. Mayor*, L. R. 6 Eq. 177; *Crawford v. Village of Delaware*, 7 Ohio St. 459 at 471; *Thompson v. Pennsylvania R. Co.*, (N. J.) 14 Atl. 897. If appellee were seeking to review the order of vacation on certiorari, or to enjoin its being made, the labor of the majority on the point would be of use. That there is power to vacate has no bearing on whether damages must be paid before possession can be taken under a vacation rightly ordered.

III. Without taking up at this time the question whether interference with making new entrances and exits in future can be considered, the record shows that appellees' building has an exit upon Grand Avenue which teams may enter, and presumably this is for taking loads into and out of the building. On Locust Street, upon the south line of the building, are several exits not large enough to admit a team and wagon. Before this alley was closed, a load could be put upon a wagon on Locust Street, driven north in the alley to Grand Avenue, and then taken into the building through the entrance on Grand Avenue; or a load might be taken out of the building by way of the entrance on Grand Avenue, taken down the alley and unloaded upon the sidewalk on Locust Street,

and taken into the building through the entrances on that street.

The majority concedes that the effect of vacating the alley and erecting a pergola therein is to prevent the use of this alley by teams, and further concedes that the building is so arranged now that all who enter or leave it must do so by the exits on Locust Street and on Grand Avenue. What the owner could before do by driving the length of the alley must now be done by driving one block east or west, then north or south for the length of the alley, and then another block either east or west. It seems clear that the opinion errs in finding that access was not substantially affected—and the cases following hold that it was.

It is the unbroken current of judicial decision that such interference with access need not be total. If there are two exits upon a street and the street be so blocked that either exit can be approached from the open end of the street, while neither exit could be reached from the other without climbing the obstruction, it would not be claimed that there was no remedy because not all access to the two entrances and exits had been taken away. While blocking a street at one end still permits entrance and exit by way of the unblocked end, such partial closing will base some remedy.

According to *Vanderburgh's* case, (Minn.) 108 N. W. 480, *Aldrich v. City of Minneapolis,* (Minn.) 53 N. W. 1072, decides, "that to entitle a party to maintain a private action for the obstruction of a public street, it was unnecessary for him to show that he was cut off from all access to his property." And the *Vanderburgh* case, speaking for itself, declares that "A property owner's special right in such cases is not limited to the part of the street on which his property abuts; his right in this respect is the right of access in any direction which the street permits, and as affecting the same, no distinction can be drawn between a partial and a total destruction. The impairment of the right is a legal injury, differing in degree only from its total destruction."

A mere impairment of the easement of access suffices. *Coyne v. City of Memphis,* (Tenn.) 102 S. W. 355. And partial cutting off of the access will base an action. *City of Chicago v. Burcky,* (Ill.) 42 N. E. 178; *Village of Winnetka v. Clifford,* (Ill.) 66 N. E. 384.

A partial destruction or diminution is a taking. Mills, Eminent Domain, Sec. 30; *Pumpelly v. Green Bay Co.,* 13 Wall. 166, 177; *Cushman v. Smith,* 34 Me. 247; *Grand Rapids Booming Co. v. Jarvis,* 30 Mich. 308.

That the impairment is but partial goes merely to the amount of compensation. *Ridgway's* case, 139 Iowa 591 (citing *Heinrich's* case, 125 Mo. 424; *Lindsay v. City of Omaha,* (Neb.) 46 N. W. 627; *Glasgow v. City of St. Louis,* (Mo.) 17 S. W. 743).

It suffices that there is serious obstruction of access (*Griffin's* case, (La.) 6 So. 624), or that "convenient" access is cut off (*McCann's* case, 149 Iowa 13).

It is an interference if there does not remain free access to the lot and building substantially in the manner the owner would have enjoyed in case there had been no interference. *Indiana B. & W. R. Co. v. Eberle,* (Ind.) 11 N. E. 467. It is actionable that a street is crossed so as to leave an abutter's lot in a *cul de sac.* *Johnsen v. Old Colony R. Co.,* (R. I.) 29 Atl. 594.

In an action to close the eastern end of a street in a square on which appellants owned land and lived, west of the point to which it was proposed to close the street, it appeared that, in order to go east where the center of trade lay, they would first have to go west to the next street and then north or south another street and thence east; and it was held that the court had no authority to close the street without the owner's consent, as it would be depriving him of property without due process of law. *Gargan v. Louisville, N. A. & C. R. Co.,* (Ky.) 12 S. W. 259.

In *Pennsylvania Co. v. Stanley,* (Ind.) 37 N. E. 288, 289, the alley was closed at one end so as to cut off the entrance

to it at that end, and it is held that this presents a physical disturbance to the right to use the alley, for which compensation must be made.  It is said:

"This act necessarily and directly materially interfered with ordinary and usual means of access to the lots.  It is a matter of general knowledge that the alleys in the rear of town or city lots are usual means of reaching the lots for many purposes, and they ordinarily add to the value and convenience of the property.  In this instance, both the allegations and proof show a material diminution in the value of the lots by reason of the obstruction."

It is said further:

"While closing up one end of an alley does not shut the owner in as completely as closing up both, it does largely deprive him of the usual means of access."

"Little good would it do to purchaser to have an open street directly in front of him, but blocked on either side. The law goes much beyond our statement, for it entitles the owner to all the streets and ways as such laid out upon the plat by which he purchases.  So runs the great current of judicial opinion."  *City of Indianapolis v. Kingsbury,* 101. Ind., 200, 212 (citing *Rowan v. Town of Portland,* 8 B. Mon. (Ky.) 232; *Trustees of Augusta v. Perkins,* 8 B. Mon. (Ky.) 207) ; *City of Winona v. Huff,* 11 Minn. 119; *Huber v. Gazley,* 18 O. 18; *Town of Derby v. Alling,* 40 Conn. 410; *Moale v. Mayor,* 5 Md. 314; *City of Logansport v. Dunn,* 8 Ind. 378; *City of Evansville v. Evans,* 37 Ind. 236.

In *State v. Superior Court* (Wash.), 66 Pac. 385, at 388 the Supreme Court of Washington says, concerning this Indiana decision:

"But it is unnecessary to cite further cases, although there are many in point; in fact, the current of decision is almost universal in this respect."

## 2.

The Coliseum building is a place for large gatherings of

people. On the east side of it, where the vacated alley is, there is, at present, no exit. If interfering with entrances and exits existing at the time of the vacation is a taking of property within the meaning of the Constitution, I think it as much such taking to interfere, by the vacation, with all potential entrances and exits. The efforts of the opinion to show that such future injury would be difficult to compensate for in advance of its happening prove that, if there be such difficulty, there must be greater latitude in formulating rules for measuring the damages due, but do not establish that there is no such damage. While *Pennsylvania Mut. L. Ins. Co. v. Heiss,* 141 Ill. 35, at 55, 56, holds with the majority that first ascertaining and paying is not a condition precedent to the right to vacate, it is not in confusion as to what is the scope of the vacation in relation to the future. It says:

"The damages . . . was intended as indemnity, not for successive, constantly accruing damages recoverable as they may afterwards be suffered, but for all damages that the landowner may suffer from all the future consequences of the careful and prudent operation of a railroad (in the adjacent streets), it being the immediate damage done to the landowner's estate by changing its permanent condition and impairing its present value."

The same case says, that where no land is taken or appropriated, there should be but one proceeding for recovering damages "in which there should be a recovery for the entire damages, past, present and future", and that "property consists, not of the physical thing of which it is predicated, but in the dominion that is rightfully and lawfully obtained over it,—the right to its use, enjoyment and disposition".

In *Eberle's* case, (Ind.) 11 N. E. 467, it is said that the interest of the abutter to be paid for "is the right to have free access over it to his lot and buildings, substantially in the manner he would have enjoyed the right in case there had been no interference with the street".

Many condemnation cases include compensation for

injury arising from the fact that the defendant has made possible use impossible. All condemnation awards consider the future. It would be strange doctrine that, although the landowner intends at a convenient time to turn a strip of land next to his house into a pasture, yet if the railroad hurries along before this intention is carried out, it can insist that it has won its race with the owner's right, and that there must not be taken into consideration that the proposed railroad would separate this potential pasture from the farmhouse and the barns. It would all become a question of relative speed in action. Here is an owner of a lot planning a building thereon. Exits and entrances are yet being discussed with the architect. If the street be then vacated, his right to have exits as it may please him is, in part, lost. If this be so, the rule that his right as abutter is taken whenever vacation prevents his doing what he might, had there been no vacation, is just a collection of words. He has left him the right to build openings giving on a closed street; and he will have no right to complain, because, forsooth, no exits existed at the time of the vacation. To be sure, the ownership of his lot is made wholly or partially worthless because of the vacation, but he has no redress because the city authorities vacated too quickly. The essential of such takings, wholly or partly, is that the dominion of the owner is interfered with. It follows that interference with future use is a taking of property. If the street were not vacated, the right to change methods of ingress and egress would remain with the owner. The vacation takes that right. Where it is conceded that making useless an entrance from an existing street interferes with ownership rights, it follows that the same is true where it is made impossible to build a useful exit that could have been built had there been no vacation. The bottom right of ownership is to change the property at will according to judgment as to what is desired, so long as no injury to the rights of others is worked.

IV. If we have settled by *decision* that substantial inter-

ference with ingress and egress constitutes a taking of private property for public use, it follows, automatically, the judgment below should be affirmed; for the Constitution requires that, whenever there is such taking, compensation shall first be made.

Whether we have *decided* that such interference is such taking involves (1) what we have said upon the point and (2) whether what was said is *decision* or is *dictum*. The majority holds that it is *dictum*, and I am constrained to differ.

What have we said?

1. Speaking of interference with access, we held, in *Cook v. City of Burlington*, 30 Iowa 94, at 103, that because the right to have access remains undisturbed by interference with abutting streets, *is an easement appendant to the lots, unlike any right of one lot owner in the lot of another, and is as much property as the lot itself,* a court of equity will enjoin the diversion without compensation of such streets to uses other than giving access to such lots. (pp. 94, 101, 102.)

We say in *Ridgway's* case, 139 Iowa 590, at 595:

"But with respect to the right which he has in the highway as a means of enjoying the free and convenient use of his abutting property, it is radically different, for this right is a special one. If this special right is of value—and it is of value if it increased the worth of his abutting premises— then it is property, no matter whether it be of great or small value. . . . This is the doctrine of our later cases, and this is the one followed in *Heinrich v. City*, 125 Mo. 424 (28 S. W. 626)."

We say in *Long v. Wilson*, 119 Iowa at 267, 269:

"His right to the street as a means of enjoying the free and convenient use of his property has a value quite as certainly as the property itself."

The foregoing statements in the foregoing two cases are repeated in *Borghart's* case, 126 Iowa 313, at 316.

The majority opinion admits that "to interfere with the

free and consistent use of ingress and egress  .  .  .  by vacation would be, in some instances, to destroy the value of the property itself''.

That for such interference compensation is due is summed up thus in the *Ridgway* case, 139 Iowa 590, 595.

''We need not quote further from these cases, or further analyze the rationale of the rule. Suffice it to say, that a street or alley may become so appurtenant to abutting property that it cannot be vacated without paying compensation to the owner of that property.''

In *Sutton v. Mentzer*, 154 Iowa 1, at 4 and 7, it is strongly intimated that, under the *Ridgway* case, cutting off access requires that payment be first made.

That such interference constitutes a taking is said in Elliott, Roads (1st Ed.), 662, 663, in a text approved in our *Ridgway* case as stating ''the doctrine of our later cases''. This text is:

''It is substantially agreed by the courts that the abutter has a private interest  .  .  .  and if he has this right it cannot be *taken* from him without compensation.''

The *Borghart* case, 126 Iowa 313, recognizes that such interference constitutes a taking, by the statement that just compensation must be made for the property ''to the extent *taken*''.

*McCann v. Clarke County*, 149 Iowa 13, cites Elliott and the *Borghart* and *Wilson* cases, with approval, and says that this ''is property which cannot be *taken* from him without just compensation''.

In *Wilson's* case, *Borghart's* case and *Ridgway's* case, we have made our own the declaration of the *Heinrich* case, 125 Mo. 424, that such interference damages property, and constitutes such ''deprivation of the use of property'' as to amount, to that extent, to a destruction of its value.

The majority opinion confesses that, in our own cases, ''the argument proceeds to the conclusion  .  .  .  that this easement is in itself property, for the taking of which he is

entitled to damages, and that the taking of it is the taking of property in contemplation of the constitutional provision''.

In the aforesaid approved text in Elliott on Roads, it is said that so to interfere ''is a taking of property within the constitutional inhibition''.

Speaking of ''impairing the incidental rights of the owner appurtenant to his lands located upon the street or highway'', it is said in *Cincinnati & S. G. A. S. R. Co. v. Inc. Village of Cummingsville,* 14 Ohio 523, that ''it still took nearly twenty years to bring it to a clear and definite description; *but, at length, in the case of Crawford v. Village of Delaware,* 7 Ohio St. Rep. 459, *it was placed upon the true ground as a right of property, protected by the Constitution, which could not be taken from the owner without compensation. . . . This easement, appendant to the lots, unlike any right of one lot owner in the lot of another, is as much property as the lot itself.''*

Of this Ohio decision, we say in *Cook's* case, 30 Iowa 94, 102, that the same is ''an opinion which, for its ability, and the wise and just solution of the questions presented, commends itself to the professional and judicial mind.''

*Long v. Wilson,* 119 Iowa 267, 273, says of this Ohio decision that the same ''so clearly expresses our conclusion that it will bear repetition'', and repeats what I have quoted from the Ohio case.

2.

It is beyond gainsaying that we have said over and again that depriving the abutter in whole or in part of access to his property is a taking of private property for public use, which entitles him to compensation. The Constitution adds that, whenever there is such taking, this compensation must be first paid or secured. Since compensation has been neither paid nor secured, affirmance should result, unless what has thus been said does not amount to decision, or unless, though it does, we desire to overrule such decisions.

Whether what we have said should be treated as dictum depends upon the application of quite elementary rules, and upon whether the majority has soundly avoided these rules. Judgments settle between the parties whatsoever is decided by the judgment. In analogy, the decision of a court of last resort may operate as *stare decisis* upon all litigation within the jurisdiction. The test as to what a judgment decides is, according to Black on Judgments, Sec. 614, approved in *Reynold v. Lyon County*, 121 Iowa 733, 742, 743, not so much whether a particular proposition has been affirmed and denied in the pleading, but whether a fact has been fully and fairly investigated' and tried; and either whether such fact was actually determined, or it must be inferred from the judgment itself that it was. A fact is necessarily determined to exist or not to exist, if its existence or non-existence is required to support the judgment rendered. Freeman, Judgments (4th Ed.), Sec. 257, p. 466. If the facts involved in the second suit are so cardinal that without them the former decision cannot stand, they must now be taken as conclusively settled. Freeman on Judgments (4th Ed.), pp. 457, 458. The estoppel is not confined to the judgment, but extends to all facts involved in it as necessary steps in the groundwork upon which it must have been founded. Freeman on Judgments (4th Ed.), Sec. 257, p. 465; *Burlen v. Shannon*, 99 Mass. 200, 203; *Gilbert v. Thompson*, 9 Cush. 349; *Queen v. Inhabitants of the Twp. of Hartington*, 4 El. & Bl. 780, 794. It is allowable to reason back from a judgment to the basis on which it stands, upon the obvious principle that, where a conclusion is indisputable, and could have been drawn only from certain premises, the premises are equally conclusive and indisputable with the conclusion. Freeman, Judgments, Sec. 257, pp. 465, 466. A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided.

*Trustees of School District No. 28 v. Stocker,* 42 N. J. Law 115, 116, 117; *Chouteau v. Gibson,* 76 Mo. 38, at 47.

It is said in the *Stocker* case, 42 N. J. Law 116, 117:

"A decision that a court has no jurisdiction of an action against a school corporation must, in the state of the law, have reached this conclusion by holding that other decisions had settled that an action would not lie against a municipal corporation in the court of a justice; that, as to the question of jurisdiction, there was no distinction between such corporations and the quasi ones controlling schools, and that the same legal difficulty which stands in the way of such suit in such court will be found in the district court act."

Most of our cases to which I have referred sustain allowance of damages on the ground that interference with access has taken property.

If a decision sustaining a judgment for damages is no more than a decision that damages are due, and all reasons assigned for allowing damages are *obiter,* then the majority is right. If, on the other hand, the cogent and relevant reasons assigned for sustaining such judgment amount to case law, then the sole question is whether the cases sustaining award did not, of necessity, determine that private property had been taken for public use. I cannot escape the conclusion that, when we say a judgment for damages shall stand, and assign as reason therefor that property has so been taken, the last is as much *stare decisis* as is the first. If suit were brought merely alleging that defendant had damaged plaintiffs, and there was a mere denial, and judgment for damages resulted upon the evidence, the only thing decided on the face of the record would be that plaintiffs were entitled to judgment for damages caused by defendant. But if the only claim in fact asserted was defendant had taken plaintiffs' horse without their consent, it would not be claimed that the judgment merely settled that damages were due plaintiffs, nor denied that the judgment settled that plaintiffs did and

defendant did not own the horse. I am unable to differentiate between the supposed case and the one we have.

### 3.

No avoidance asserted in the ruling opinion seems to meet this. It seems impossible to sustain the claim of the majority, that, because the cases devote some argument to meet the argument that plaintiffs had no right distinct from those of the public, therefore, the whole basis for giving judgment for damages was that the abutter does have a right distinct from that of the public. Plaintiffs could not have judgment for damages merely because it was decided that they had a special interest not possessed by the general public. That merely allowed them to stay in court. Suppose one sued, alleging that the property of his wife had been converted. Surely, a holding that he was a party who could bring the suit would not prove the alleged conversion. No more material is it that plaintiffs had enough special right to sue. They could have judgment for damages only by proving that they had been damaged. Whatever is presented for consideration, and is considered, and is relevant, and a possible basis for judgment, cannot well be dictum. Where one party contends that the plaintiffs have no interest distinct from the public, and therefore are entitled to no damages, plaintiffs respond that they do have such interest, and that such interest is private property which has been taken from them for public use, and that they are entitled to damages, and there is a judgment for damages, I cannot conceive how it can be *obiter* to declare that what was done does constitute such taking.

In *Long v. Wilson*, 119 Iowa 267, 269, plaintiff was bound by a judgment only if he had no interest in abutting property. We held that he was not bound by the judgment because he did have an interest. We said he was bound because he had an interest consisting of shutting off his approach to his homestead, resulting in a taking of his prop-

erty. If that be *obiter,* so are the naked statements that plaintiff was bound, or that he had an interest. Did the court go outside the proper scope of *decision* because it did not confine itself to making the naked statement that plaintiff had an interest, but stated what that interest was? Was the last not a decision that, in every case where like acts occur, parties are deprived of an interest in property?

The essential position of the majority is that, though it is law that interference with access constitutes a taking of property, within the meaning of the constitutional provision requiring that compensation be paid before the taking is effected, yet, if we uphold a judgment for damages which would not have been given unless plaintiffs had established that there was such interference, our affirmance fails to decide that such interference had occurred and that all must recognize the consequence attached by law to such interference.

4.

I am unable to see how the fact that damages may be recovered therefor is necessarily material, either upon the question of whether interference with access in fact constitutes a taking within the purview of the Constitution, or upon whether our decisions settle that such interference is such taking. The fact that damages may be got for interfering with access does not necessarily prove that there has been no taking. For, in the words of *Garrett v. Lake Roland E. R. Co.,* (Md.) 29 Atl. 830, at 832, "Every taking involves an injury of some kind, though every injury does not include a taking." An assertion that, because damages may be recovered, there has been no taking for which prepayment may be exacted, simply overlooks that a landowner who has an unquestioned right to demand prepayment may waive such right and sue for damages and recover them, and that such recovery does not change that there has been a taking for which the plaintiffs might have proceeded as the Consti-

tution permits. The confusion arises from overlooking that the Constitution permits the exacting payment in advance, but does not compel it.

And so of adjudication. That depends. Should the judgment express, or it be provable, that the award is for an injury which does not constitute a taking of property, then the judgment would decide that there had been no taking. But if the basis of the claim for damages was that there had been an injury which did constitute such taking, judgment for damages would conclude the point that way.

The remark in *Borghart's* case, 126 Iowa 313, 316, "as the authority of the city to vacate is conceded, . . . her only recourse was an action for damages", is not overlooked. On the face of it, and manifestly, this is the purest dictum. The plaintiff had brought a suit for damages; no claim was made that this was not the proper remedy. Whereupon, the court volunteered not only that it was the proper one, but the only one. This seems to be about all the foundation the majority opinion has for the statement: "The most that can be said for plaintiff's claim is that his property is or may be damaged by the action of the city in vacating." It is rather meaningless, too. For, as has been seen, that one is warranted in claiming that the vacation has damaged his property does not in the least negative the right to demand prepayment of damages in virtue of the Constitution.

### 5.

The form of the action is immaterial, if the cause of action is the same. Therefore, it does not matter that some of our cases were suits asking damages for the vacating, while the present suit is one enjoining the obstruction, of an alley. While I think it immaterial, let it be said in passing that *Long v. Wilson*, 119 Iowa, at 267, was an action asking an injunction against encroachment, and the abatement of the obstructions already placed. It has been held to be immaterial

that the first suit is one for foreclosure, and the other, trespass to try title. *Lee v. Kingsbury,* 13 Texas 68. We have held that, though the first suit is one for the construction of a lease, and the second, for acts alleged to have been done in violation of the lease, construction in the first rules in the second. *Madison v. Garfield Coal Co.,* 114 Iowa 56, 63, 64. It is well settled that it is not material that the claim or demand differs, or the cause of action, or the subject of the action, and held that the finding of ownership in a search warrant proceeding is binding in a suit to recover possession of the property (*Montgomery v. Alden,* 133 Iowa 675); that a denial of habeas corpus rules in a suit on the bond given by the petitioner; and that a judgment of a court of common law may be an estoppel in a court of admiralty.

As a rule of appellate practice, it is true that, if suit is brought for damages for a taking without insisting upon prepayment, the plaintiff may not complain that prepayment has not been ordered. But if we allow damages to stand because we find that what was done constitutes a taking of private property for public use, this becomes a binding precedent that what was done is such a taking; a precedent which may be invoked in other suits,—though not suits for damages,—in which other suits the plaintiff has not elected to waive his constitutional rights. Suppose that one coupon of several attached to a bond is taken in such manner as that suit will lie thereon for the value of the coupon, or that replevin may be maintained. Suppose the facts as to the taking are undisputed, there is suit for the value, plaintiff has judgment, and we affirm. I take it, this would be a finding that, upon such facts, plaintiff owned the coupon when it was taken, and that the taking was wrongful. Suppose, at the time the one coupon was taken, defendant took another, and thereafter plaintiff brings replevin. Would it be claimed that our first decision had not settled for the second suit that the taking was wrongful and that the second coupon, also, was owned by the plaintiff?

6.

The majority lays much stress upon the claim that ascertaining damages in advance would be very troublesome and expensive, because it may turn out that some of the abutters are not damaged at all, and that some suffer but small, while others sustain larger, damages. It is said the mere act of vacation in itself may or may not cause damage to abutters; that the idea of damage may be negatived; and that the abutter often asks the vacation, and that it may sometimes be a direct benefit to him. I venture to suggest, in passing, that the question of possible benefits ought not to enter into this, if we admit that the Constitution rules; because that instrument provides, in terms, that no advantages resulting to the owner shall be taken into consideration. Assuming, for present purposes, that these difficulties are actual, I cannot grant them materiality. If difficulties in ascertaining damages and paying them in advance there be, these should have been urged upon the framers of our Constitution, rather than us. Whatever the difficulty may be, it ceased to be operative as a sound argument when the Constitution was passed, with the provision that payment should be ascertained and made in advance.

The Kansas Constitution provides that no right of way shall be appropriated until full compensation be first made or secured by a deposit of money. That does not differ essentially from the effect of our own Constitution. The Supreme Court of Kansas said, in *Missouri, K. & T. R. Co. v. Ward,* 10 Kans., at 356, that this provision "cannot be overborne by any possible necessity. It prevails against constructions given by courts in other states. Until the money is paid or deposited the corporation gets no rights."

We said, in *Henry v. Dubuque & P. R. Co.,* 10 Iowa 540, at 543, what, it seems to me, has not been impaired by age, to wit:

"It would not be competent for the legislature to provide the means or method of ascertaining the landowner's

damages, to be paid at some time after the appropriation of the land, or at any other time after the damages should be assessed. The just compensation referred to therein, must be made before, or secured to be made as soon as the jury shall determine the amount, and it would not be competent for the legislature to provide for the postponement of the same to a time after such assessment.''

In *State ex rel. Smith v. Superior Court,* (Wash.) 66 Pac., at 389, the Supreme Court of Washington says:

''We can foresee many difficulties, and perhaps much litigation, likely to ensue from the faithful enforcement of our constitutional requirement that damages be first paid. But we have no choice in the matter, and these difficulties, as well as many others, must be met and dealt with as they arise.''

This would seem to be a complete answer to the majority, and to a case like that of *Vanderburgh's,* (Minn.) 108 N. W. 480, which will have attention presently.

I shall endeavor to show there is no uncertainty or difficulty about ascertaining the damages in advance, and, at least, none that would not, measurably at least, exist if the same thing were done later. However that may be, I am strongly persuaded that we have no right to deny a remedy granted by the Constitution, and to substitute another, even if it be conceded that to obey the Constitution will injure some who have disregarded it, and even though the remedy substituted be more certain and more convenient than the one the Constitution provides.

But is there any insuperable difficulty or uncertainty about ascertaining damage? It is held to be the difference between the value of the lot before and after the interference. *Johnsen's* case, (R. I.) 29 Atl. 594. Also, the actual diminution in the market value of the premises for any use to which they may reasonably be put, which is occasioned by the interference. *City of Denver v. Bayer,* (Colo.) 2 Pac. 6.

Where a right of way went through a leasehold, it was

conceded that this made it difficult to estimate damages, but we determined that it could be done by ascertaining the difference in value of the annual use of the property before and after. *Renwick, S. & C. v. D. & N. W. R. Co.*, 49 Iowa 664. The measure will be the same as if there had been no highway to interfere with, and the fact that one exists, and is merely interfered with, becomes a mere circumstance tend· ing to diminish the recovery. *Grand Rapids & Indiana R. Co. v. Heisel*, 38 Mich. 62.

So far from discriminating against ascertainment and payment in advance, *Koch v. Williamsport Water Co.*, 65 Pa. St. 288, 289, favors it, because "all the damages, retrospective as well as prospective, can thus be ascertained and settled in one proceeding, and future litigation, or the necessity of it, avoided." The *Heiss* case, 141 Ill. 35, takes the same view.

We have held unbrokenly that, where a right of way is taken by a railroad, the true measure of what is just compensation is to first ascertain the fair market value of the premises over which the proposed improvement is to pass, irrespective of such improvement, and like value of the same in the condition in which they will be immediately after the land for the improvement has been taken, irrespective of the benefit which will result from the improvement; and that the difference in value is the measure of compensation.

Assuming, for the sake of argument, that, if it be difficult or expensive to ascertain and pay damages in advance, it obviates the necessity of obeying the Constitution, I am yet unable to understand why there is any greater difficulty in determining damages for the purpose of prepayment than in ascertaining them after the taking has been completed. The majority holds that future changes or change in the use of the building cannot be considered. If that be so, the injury that the vacation will do is a completed chapter when the vacation is ordered. It is known just what alley passage will be cut off. It is settled what exists to be affected by the

vacation. Why cannot a jury tell what the damage will be on the day it becomes certain that the alley is to be vacated as well as it can after the alley has actually been closed? But if the last were easier than the first, I repeat that I am unable to understand how it affects the situation. It may be conceded that what damage is caused by the construction of a railroad may be more definitely known after it is completed and running; and that its effect in actual operation upon the particular piece of land, and upon all other lands affected, can then be more definitely known than before the actual demonstration. But it would hardly be claimed that a proposed railroad could, on that account, complete construction before making or securing payment. We have no authority to meet difficulties in computation by amending the Constitution.

V. If the question were open in this court, I would still be of opinion that we have not "chosen between conflicting decisions the better rule", nor the one established by the weight of authority. Sec. 56, Lewis, Eminent Domain (2d Ed.); *City of Indianapolis v. Kingsbury,* 101 Ind. 200, at 211; *Bayer's* case, (Colo.) 2 Pac. 6; *Bigelow v. Ballerino,* (Cal.) 44 Pac. 307; *Pearsall v. Board of Supervisors,* (Mich.) 42 N. W. 77; *Kimball v. Homan,* (Mich.) 42 N. W. 167; *Lackland v. North Missouri R. Co.,* 31 Mo. 180; *Heller v. Atchison, Topeka & S. F. R. Co.,* 28 Kans. 625; *Abendroth v. New York El. R. Co.,* (N. Y.) 25 N. E. 496; *Dorman v. City of Jacksonville,* 13 Fla. 538, approved in *Long v. Wilson,*—all hold that the right or easement of ingress and egress is property.

*Story v. New York El. R. Co.,* 90 N. Y. 122, 129; *Lohr v. Metropolitan E. R. Co.,* (N. Y.) 10 N. E. 528; *Griffin's* case, (La.) 6 So. 624; *Pumpelly's* case, 13 Wall (U. S.) 166, 177; *Cushman's* case, 34 Me. 247; *Grand Rapids Booming Co. v. Jarvis,* 30 Mich. 308; Mills' Eminent Domain, Sec. 30, all hold that impairment of access, in whole or in part, constitutes a taking of such property. In the *Heller* case and the *Story* case, injunction is allowed to prevent such taking prior

to the payment of compensation. Excepting these two cases, I do not claim that the others decide that such property cannot be taken before compensation is paid or secured. But they do establish two out of three propositions essential to a decision that such property cannot be taken without prepayment of damages, to wit: that the right in question is property; and that such interference as the one at bar is the taking of that property. It may fairly be claimed that these two propositions establish the third; that, if private property is taken for public use, the provisions of the Constitution add that prepayment of damages is necessary. But there is authority which establishes the third proposition, in terms. *Crawford's* case, 7 Ohio St. 459, at 471, approved in our own cases, holds that, where there is such a taking by interfering with access, the spirit of the Constitution makes prepayment essential. *Schaaf v. Cleveland, M. & S. R. Co.,* (Ohio) 64 N. E. 145, decides that the letter of the Constitution requires such prepayment. So does *Horton v. Williams,* (Mich.) 58 N. W. 369. *Sanborn v. Belden,* 51 Cal. at 266, 268, *Davis v. San Lorenzo R. Co.,* 47 Cal. 517, say that the vacation may be reviewed on certiorari or restrained by injunction. So do *California Pacific R. Co. v. Central Pacific R. Co.,* 47 Cal. 528; *Bannon v. Rohmeiser,* (Ky.) 13 S. W. 444; and *Haynes v. Thomas,* 7 Ind. 38 (the last two being approved in *Long v. Wilson*). *Adams v. Chicago, B. & N. R. Co.,* (Minn.) 39 N. W. 629; and *Lamm v. Chicago, St. P. M. & O. R. Co.,* in the same court, 47 N. W. 455; *Theobold v. Louisville, N. O. & T. R. Co.,* (Miss.) 6 So. 230, at 231, approved in our own cases, hold such interference with access is a taking for public use within the meaning of the Constitution. The erection of a telegraph line is scarcely an actual taking, and is in effect a mere interference with the full use of the land; but it is held in *Postal Telegraph Cable Co. v. Southern R. Co.,* 89 Fed. 190, that a telegraph company may not enter into possession and construct, until the damages have been assessed and paid into court.

2.

Decisions found in other jurisdictions, that prepayment is not. required, are, in my opinion, either inapplicable or weak. *Stetson's* case, 75 Ill. 74, *Parker's* case, (Ill.) 34 N. E. 473, and perhaps *Heiss'* case, (Ill.) 31 N. E. 138, hold that prepayment is not required because the abutter has no special interest. But they overlook that the Constitution of Illinois has no requirement that compensation be first paid or secured, a fact to which *State ex rel. Smith v. Superior Court,* (Wash.) 66 Pac. 385, calls attention. The Illinois Constitution of 1870 (Art. II, Sec. 13) is: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the state, shall be ascertained by a jury, as shall be prescribed by law." *Lorie v. North Chicago City R. Co.,* (Ill.) 32 Fed. 270, decided in Illinois, merely follows the *Stetson* case. *Clemens v. Conn. Mut. Life Ins. Co.,* (Mo.) 82 S. W. 1, at 3; *Heinrich's* case, (Mo.) 28 S. W. 626, follow the Illinois cases, and overlook that the Missouri Constitution is like that of Illinois, and does not require prepayment.

In Maine, the law permits a reasonable time wherein to make compensation, and there is right to possession as soon as the improvement is determined upon and located. *Davis v. Russell,* 47 Me. 443, at 445.

3.

It seems to me that the fact that some states have added "damage or injury" to "taking" is not material. In some jurisdictions it was held that, without these words in the Constitution, prepayment was required when a damage constituted a taking. In others, the absence of such words was thought controlling, and thereupon the words were added in those jurisdictions. But in what way did this change in Constitutions change the conflict between these decisions, or add anything to the number or weight on either side of the con-

flict? The courts which held such an interference to be a taking adhere to the holding. The courts which required the change, of course, respected it after it was made. They still held that such interference was not a taking, but also held that it was covered by the addition of the words "damaged or injured". One set of decision makers remained unaffected by a change which, in their view, changed nothing. The other set merely became more thoroughly convinced than ever that interference with access was not a taking.

Ohio and Michigan require prepayment. I am quite sure their Constitutions do not have the words "damaged or injured". So that the statement by the majority that prepayment is not demanded in any decisions made under Constitutions lacking such words is erroneous in fact. But how is it material, unless the courts of states which have "damaged" in the Constitution hold that damage demands prepayment *because* the Constitution contains the word? But where such courts order prepayment *because* they find that the like of what was done in this case constitutes a taking, it constitutes an authority for that conclusion, even though it might have been put on the ground that, under the wording of their organic act, any damage was enough, though it fell short of being a taking.

### 4.

*McGee's Appeal,* (Pa.) 8 Atl. 237; *Wetherill v. Pennsylvania R. Co.,* (Pa.) 45 Atl. 658; *Morris v. City of Philadelphia,* (Pa.) 49 Atl. 70; *McMahon v. St. Louis, A. & T. R. Co.,* (La.) 6 So. 640; *Macy v. City of Indianapolis,* 17 Ind. 267; *City of Lafayette v. Bush,* 19 Ind. 326; *City of Delphi v. Evans,* 36 Ind. 90; *Stetson's* case, 75 Ill. 74; *Parker's* case, (Ill.) 34 N. E. 473; and *Richardson v. Vermont Cent. R. Co.,* 25 Vt. 465, hold that what was done in this case does not require prepayment of damages. While it runs counter to *G., C. & S. F. R. Co. v. Fuller,* 63 Texas 467, 469, *Rische v. Texas Transp. Co.,* (Tex.) 66 S. W. 324, affirms the same,

and so does *Heiss'* case, (Ill.) 31 N. E. 138. It holds, also, that no damages are recoverable where the impairment was on one side of the center line of the street and the lot alleged to have been injured was on the other side, because the abutter had an interest only to the center line. In this it is contradicted by *Lackland's* case, 31 Mo. 180 (approved in *Long v. Wilson,* 119 Iowa 267), to the effect that it is immaterial in such case whether the owner of the lots owns to the middle of the street. Each of these rests upon the ground that the abutting owner has no interest in the adjoining way or in its being kept open, distinct from the general public, and is, therefore, not only without the right to have damages prepaid, but to recover damages. But we hold exactly the reverse, and the opinion asserts what we do. Surely, we should attach no weight to decisions which rest wholly upon what we hold is an utterly unsound basis.

5.

Our Constitution commands that payment shall be made or security given before the taking. It is no answer that the taker is one financially able to respond to a judgment for damages.

In *Garrett v. Lake Roland El. R. Co.,* (Md.) 29 Atl. 830, 831, prepayment is held not to be required, because the ordinance involved "makes ample provision for the prompt and effective enforcement of such judgment as a court of law, in an appropriate proceeding, may pronounce". Possibly, the Constitution of Maryland provides for security, and that so the case holds merely that security has been given which meets the Constitution. Otherwise, the case overlooks that, if the Constitution requires prepayment, both reason and many authorities hold that there can be no substitute for prepayment. *Martin v. Tyler,* (N. D.) 60 N. W. 392, and *Sanborn v. Belden,* 51 Cal. 266, at 268, declare that prepayment means prepayment, and that a constitutional provision requiring such payment prohibits substitutes for prepayment.

In the *Heiss* case, 141 Ill. 35, at 57, which is much relied
on by the majority, it is said:

"It has been uniformly held in this country, that the
compensation need not be paid before the taking,—it is suf-
ficient that provision be made for compensation afterwards,
provided the payment be made certain. So enactments pro-
viding for taking possession of property sought to be con-
demned for public use, upon giving bond, etc., have been
held valid. The rule is stated by Chancellor Walworth (18
Wend. 9) that the compensation must be either ascertained
and paid before the property is appropriated, or an appro-
priate remedy must be provided, and upon an adequate fund,
that it may be reached by the owner through the medium of
the courts of justice. And in *Gardner v. Village of Newberg,*
2 Johnson's Chancery, 162, Chancellor Kent held that if, in
any case, the government proceeded without taking these
preliminary steps, their agents and officers may and should
be restrained by injunction."

And see *Henry v. Dubuque & P. R. Co.,* 10 Iowa 540, 543.

In *Covington S. R. T. R. Co. v. Piel,* (Ky.) 8 S. W. 449,
451, it is said:

"It is manifest that a mere security in the bond of a
corporation cannot be regarded as just compensation pre-
viously made the owner, within the spirit and meaning of the
bill of rights. That the citizen would be more likely to receive
compensation from the state out of an abundant treasury,
and by reason of its power to enforce payment by exactions
from its citizens in the form of taxation, than from a private
corporation owning its corporate property, or the individual
security given by it, will be readily conceded. But in what
manner this protects the citizen who has been deprived of
his property in his constitutional rights it is difficult to com-
prehend. The security may be more ample in the one case
than in the other, and still his right of property has been
destroyed in its appropriation to a public use without just
compensation previously made; and all that is left him,

whether due by the municipality, county or corporation, is the right, if. a voluntary payment is not made at the end of the litigation, to take coercive measures for the recovery of the value of his property, to which he was clearly entitled from the municipality or the private corporation before either could use it for public purposes. Viewed in any aspect of the case, whether taken by the sovereign, or by the corporation under sovereign authority, it is .a. destruction of the constitutional guaranty for the protection of private property to appropriate it, without the consent of the owner, to a public use, without first making compensation to him in money for the value of the property of which he has been deprived."

The case cites Cooley on Constitutional Limitations, Sec. 562, where it is said:

"It is not competent to deprive the citizen of his property and turn him over to an action at law against a corporation, which may or may not prove responsible and to a judgment of uncertain efficacy."

*Sutton's* case, 154 Iowa 1, 7, seems to contemplate an actual appropriation of money. It says:

"As there has been no appropriation by the city to a private use, it is not to be presumed that such compensation has been made."

In *Omaha Horse R. Co. v. Cable Tram-Way Co.,* (Neb.) 32 Fed., at 727 and 728, dealing with a paralleling of one transportation company having exclusive franchise, the question is avoided by holding that the prayer for injunction and other equitable relief was broad enough to allow the assessment of damages in the suit to. enjoin, which, if carried out, would, of course, work a prepayment.

The *Clemens* case, (Mo.) 82 S. W., at 3, proceeds upon the remarkable theory that no injunction can be allowed because "the very fact that he had an ample remedy at law deprives him of the remedy by injunction". This is a polite way of saying that, if the Constitution requires prepayment, a taking without prepayment cannot be stopped because the

damage can be collected by suit at law subsequent to the taking. *McMahon's* case, (La.) 6 So. 640, proceeds along these same lines, to wit, that an injunction will not lie because it does not appear that the injury was irreparable, and because there was an adequate remedy at law.

*Vanderburgh's* case, (Minn.) 108 N. W. 480, is a good composite type, embodying more of the errors of the ruling opinion than any other case which that opinion specially approves. It admits that impairment of access is a taking of private property for public use, and that the Minnesota Constitution requires that, on such taking, the damages shall be first paid or secured. It holds that there need not be such prepayment, and also holds that damages may be recovered. It does all this with the apology that to allow damages without requiring their prepayment is an "exception to the general rule, though perhaps not logical". It defends its confessed disregard of the Constitution with the statement that ascertaining damages after the injury is complete can be done more certainly than before completion, and, in effect, that the Constitution should be disregarded because it will be more convenient to disobey than to obey it; that if it be obeyed, others who have in the past disregarded it may find themselves with a clouded title; and that a holding consistent with the Constitution might, therefore, lead to much litigation. The highest court in the land is not above the laws of logic, and is not entitled to approval for violating the fundamental law. I leave it to others to treat a decision as being persuasive authority wherein it is confessed that it is treating white as black, and tramping logic and fundamental law under foot for the sake of fancied convenience.

"A single decision, made without notice of the statute, and which in fact sets the statute aside, cannot be invoked as authority." *Duff v. Fisher,* 15 Cal. 375.

The Supreme Court will not follow the line marked out by a single precedent case, placing its decision on the rule of

*stare decisis* alone, without regard to the ground on which such case was adjudicated. *State v. Williams,* 13 S. C. 546.

I would affirm.